| | |
|---|---|
| 1 | MONTELEONE & McCRORY, LLP |
| 2 | JEFFREY S. HURST (138664)<br>725 South Figueroa Street, Suite 3200 |
| 3 | Los Angeles, CA 90017<br>Tel: 213/612-9900 |
| 4 | hurst@mmlawyers.com |
| 5 | DICELLO LEVITT & CASEY, LLC<br>ADAM J. LEVITT* |

1 MONTELEONE & McCRORY, LLP
JEFFREY S. HURST (138664)
2 725 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
3 Tel: 213/612-9900
hurst@mmlawyers.com
4
DICELLO LEVITT & CASEY, LLC
5 ADAM J. LEVITT*
Ten North Dearborn Street, 11th Floor
6 Chicago, IL 60602
Tel: 312/214-7900
7 alevitt@dlcfirm.com

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES III*
H. CLAY BARNETT, III*
272 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@Beasleyallen.com

8 ***Counsel for Plaintiffs and the Proposed Classes***
[Additional Counsel Appear on Signature page]
9 * *Pro Hac Vice* motion to be filed

10 **UNITED STATES DISTRICT COURT**

11 **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

12 TONYA COMBS, JAMES
TINNEY, MELISSA JUGO
13 TINNEY, CRYSTAL GILLESPIE,
MELISSA STALKER, and JOSEPH
14 C. HARP JR., individually and on
behalf of all others similarly situated,
15
Plaintiffs,
16
v.
17
TOYOTA MOTOR
18 CORPORATION, TOYOTA
MOTOR SALES, U.S.A., INC., and
19 TOYOTA MOTOR ENGINEERING
& MANUFACTURING NORTH
20 AMERICA, INC.,
21 Defendants.

Case No. 2:17-cv-04633

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1    Plaintiffs Tonya Combs, James Tinney, Melissa Jugo Tinney, Crystal
2  Gillespie, Melissa Stalker, and Joseph C. Harp Jr. (collectively, "Plaintiffs"),
3  individually and on behalf of the other members of the below-defined nationwide
4  and statewide classes they respectively seek to represent (collectively, the
5  "Class"), hereby allege the following against Defendants, Toyota Motor
6  Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering &
7  Manufacturing North America, Inc. (collectively, "Defendants" or "Toyota"),
8  upon personal knowledge as to themselves and their own acts, and as to all other
9  matters upon information and belief, based upon the investigation made by the
10  undersigned attorneys.

## I.    NATURE OF THE CASE

12    1.    This is a class action lawsuit brought by Plaintiffs seeking damages
13  and equitable relief individually and on behalf of the other Class members, each
14  of whom purchased or leased one or more model year 2011-2017 Toyota Sienna
15  vehicles equipped with defective sliding rear doors (the "Sliding Doors").  These
16  vehicles are defined herein as the "Class Vehicles."

17    2.    At the time of sale or lease, the Class Vehicles contained defects in
18  the  components of the Sliding Doors that lead to the sliding doors' failure to
19  open and close properly, or to open and close unexpectedly (collectively, the
20  "Sliding Door Defect").  Toyota concedes the uniform defect and safety issue,
21  which is the subject of a November 22, 2016 recall.  However, Toyota has failed
22  to provide an adequate remedy or otherwise repair or replace the defective parts.

23    3.    The unresolved defect involves the failure of the Sliding Doors'
24  assembly, which includes the failure of the front and rear latch circuit (which
25  secures the doors to the center and rear pillars of the vehicle's frame), failure of
26  the motor circuit (which opens and closes the doors), failure of the pulley/cables
27  in the doors, failure of the door switches, failure of the controller assembly, and
28  failure of the door hinge.  Additionally, the sliding door cable binds and creates a

popping noise during operation in either direction.  The Vehicle's door assembly (the "Sliding Door Assembly") is defective and, as known to Toyota, fails to adequately and consistently perform its basic functions.

4.    Not only is the Sliding Door unreliable, but, even worse, it poses a safety risk and is unreasonably dangerous.  When the door fails to open, passengers may not leave from the two sets of rear seats, posing a safety hazard when quick exit from or access to the vehicle is essential, especially when young children occupy the rear seats.  The Sliding Door may also open unintentionally while the vehicle is in motion, placing passengers at risk of being ejected from the vehicle, or close unintentionally, possibly crushing a passenger.

5.    Toyota knows or should have known that the Class Vehicles and the Sliding Doors are defective and not fit for their intended purposes.  Nevertheless, Toyota actively concealed and failed to disclose this defect to Plaintiffs and the other Class members at the time of purchase or lease and thereafter.  Toyota did not disclose the defect until November 22, 2016, when it initiated its inadequate and limited recall with the National Highway Transportation Association.

6.    Not only did Toyota actively conceal the fact that particular components within the Sliding Door Assembly in the Class Vehicles are defective and require costly repairs, but it also failed to reveal that the existence of this defect causes serious safety risks.

7.    As described more fully below, in paragraphs 38 through 51, as evidenced by the Technical Service Bulletins and Recall Notice issued by Defendants, Defendants knew or reasonably should have known the Sliding Door Defect would malfunction frequently, before and after the purported expiration of Toyota's "Comprehensive Warranty" after 36 months or 36,000 miles, whichever came first.

8.    By 2011, if not earlier, Toyota knew or should have known about the Sliding Door Defect, because its Generation II 2003-2010 Sienna vehicles

2

Case No. _____

CLASS ACTION COMPLAINT

(with similar sliding door assemblies) were plagued by sliding door operational failure. Despite this longstanding knowledge of this defect, Toyota has not given extended warranty coverage or otherwise repaired the Sliding Door Defect.

## II.    JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and one or more of the other Class members are citizens of a different state than one Defendant.

10.    This Court has personal jurisdiction over Toyota because Toyota has purposefully availed itself of the privilege of conducting business in the State of California by advertising and selling its manufactured vehicles (including the Class Vehicles) within the State of California. Additionally, Toyota has maintained systematic and continuous business contacts with the State of California and is registered to conduct business in this State.

11.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant Toyota Motor Sales USA, Inc. has its principal place of business in this District and Defendants have marketed, advertised, sold, and leased Class Vehicles within this District.

## III.    PARTIES

**A.    Plaintiffs**

**1.    Florida**

12.    Plaintiff Tonya Combs is a resident of Prestonburg, Kentucky.

13.    Ms. Combs owns a 2015 Toyota Sienna equipped with Sliding Doors. Ms. Combs purchased her Sienna used from Off Lease Only in Lake Worth, Florida.

14.    Toyota failed to disclose the Sliding Door Defect to Ms. Combs before she purchased her Toyota, despite Toyota's knowledge of the defect. Ms. Combs, therefore, purchased her Sienna with the incorrect understanding that it

1  would be a safe and reliable vehicle.  Ms. Combs would not have purchased or

2  paid as much for her Toyota Sienna if she knew it was defective and unsafe to

3  herself and others because it contains the Sliding Door Defect.

4      **2.    Kentucky**

5      15.    Plaintiff Crystal Gillespie is a resident of Ulysses, Kentucky.

6      16.    Mrs. Gillespie owns a 2013 Toyota Sienna equipped with Sliding

7  Doors.  Mrs. Gillespie purchased her Sienna used from Pop's Chevrolet Buick in

8  Prestonsburg, Kentucky.

9      17.    Toyota failed to disclose the Sliding Door Defect to Mrs. Gillespie

10 before she purchased her Toyota, despite Toyota's knowledge of the defect.  Ms.

11 Gillespie, therefore, purchased her Sienna with the incorrect understanding that it

12 would be a safe and reliable vehicle.  Mrs. Gillespie would not have purchased or

13 paid as much for her Toyota Sienna if she knew it was defective and unsafe to

14 herself and others because it contains the Sliding Door Defect.

15     18.    Plaintiff Melissa Stalker is a resident of Van Lear, Kentucky.

16     19.    Mrs. Stalker owns a 2017 Toyota Sienna equipped with Sliding

17 Doors.  Ms. Stalker purchased her Sienna new from Walters Toyota in Pikeville,

18 Kentucky.

19     20.    Toyota failed to disclose the Sliding Door Defect to Mrs. Stalker

20 before she purchased her Toyota, despite Toyota's knowledge of the defect.  Ms.

21 Stalker therefore, purchased her Sienna with the incorrect understanding that it

22 would be a safe and reliable vehicle.  Mrs. Stalker would not have purchased or

23 paid as much for her Toyota Sienna if she knew it was defective and unsafe to

24 herself and others because it contains the Sliding Door Defect.

25     **3.    Pennsylvania**

26     21.    Plaintiff Joseph C. Harp Jr. is a resident of Fort Washington,

27 Pennsylvania.

28

Case No. _____
00122694
CLASS ACTION COMPLAINT

22.     Mr. Harp owns a 2015 Toyota Sienna equipped with Sliding Doors. Mr. Harp purchased his Sienna new from Thompson Toyota in Doylestown, Pennsylvania.

23.     Toyota failed to disclose the Sliding Door Defect to Mr. Harp before he purchased his Toyota, despite Toyota's knowledge of the defect.  Mr. Harp, therefore, purchased his Toyota with the incorrect understanding that it would be a safe and reliable vehicle.  Mr. Harp would not have purchased or paid as much for his Toyota Sienna if he knew it was defective and unsafe to himself and others because it contains the Sliding Door Defect.

**4.    West Virginia**

24.     Plaintiffs James Tinney and Melissa Jugo Tinney are residents of Charleston, West Virginia.

25.     Mr. and Dr. Tinney own a 2016 Toyota Sienna equipped with Sliding Doors.  Mr. and Dr. Tinney purchased their Sienna new from Bert Wolfe Toyota in Charleston, West Virginia.

26.     Toyota failed to disclose the Sliding Door Defect to Mr. and Dr. Tinney before they purchased their Toyota, despite Toyota's knowledge of the defect.  Mr. and Dr. Tinney, therefore, purchased their Sienna with the incorrect understanding that it would be a safe and reliable vehicle.  Mr. and Dr. Tinney would not have purchased or paid as much for their Toyota Sienna if they knew it was defective and unsafe to themselves and others because it contains the Sliding Door Defect.

**B.    Defendants**

27.     Defendant Toyota Motor Corporation ("Toyota Motor" or "TM") is a foreign corporation located at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan.

28.     Toyota Motor is in the business, through its various subsidiaries, of manufacturing, producing, marketing and distributing automobiles worldwide,

including in California and every other state in the nation.

29.    Defendant Toyota Motor Sales USA, Inc. ("TMS") is a wholly owned subsidiary of Toyota Motor Corporation and is incorporated in California with its principal place of business at 19001 South Western Avenue, Torrance, California 90501.

30.    TMS handles the marketing, sale, and distribution of Toyota vehicles, including the Class Vehicles, in the United States.  TMS provides the express and implied warranties for the Class Vehicles.

31.    Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is a subsidiary of Toyota Motor Corporation with its principal place of business in Erlanger, Kentucky.   TEMA manufactures, produces, markets and distributes the Class Vehicles throughout the United States, including in California.

## IV.    FACTUAL ALLEGATIONS

### A.    The Sliding Door Defect Within the Class Vehicles

32.    All Class Vehicles contained the materially identical defective Sliding Door Assembly.  The Sliding Door Assembly results in the Sliding Doors either not opening or closing properly or opening or closing unexpectedly.

33.    The Sliding Door Defects included, but were not limited to, failure of the motor circuit, failure of the powered latch circuit, failure of the cable and the cable assembly in the sliding doors, failure of the door switches, failure of the control assembly and failure of the sliding door assembly's hinge.

34.    Defendants have been aware of the Sliding Door Defect for years, yet failed to notify Plaintiffs and the other Class members or to repair the defect.

35.    Defendants acquired their knowledge of the Sliding Door Defect through sources unavailable to Plaintiffs and the other Class members, including but not limited to pre-release testing data, early consumer complaints about the Sliding Door Defect to Toyota and its dealers who are its agents for vehicle

1    repairs, testing conducted in response to those complaints, warranty and post-

2    warranty claims, replacement part sales data, aggregate data from Toyota dealers,

3    and data from other internal sources.

4        36.    Plaintiffs and the other Class members could not have discovered

5    the Sliding Door Defect through any reasonable inspection of their vehicles prior

6    to their purchase or lease thereof.

7        37.    Plaintiffs and the other Class members were without access to the

8    information concealed by Defendants as described herein, and, therefore,

9    reasonably relied on Defendants' representations and warranties regarding the

10   safety, quality, durability, and other material characteristics of their vehicles.

11   Had Plaintiffs and the other Class members known of the Sliding Door Defect

12   and the potential danger, they would have taken steps to avoid that danger and/or

13   would have paid less for their vehicles than the amounts they actually paid, or

14   would not have purchased or leased the vehicles.

15   **B.    The Technical Service Bulletins**

16       38.    Beginning in 2011, Toyota issued Technical Service Bulletins

17   ("TSBs") relating to the Sliding Door Defect.  Through the TSBs, Toyota

18   informed its dealers, but not its customers, about the Sliding Door Defect.

19   Furthermore, the TSBs provided inadequate relief and did not fix the Sliding

20   Door Defect.

21       39.    On May 24, 2011, Toyota issued a TSB, T-SB-0044-11, entitled

22   "Power Slide Door Abnormal Operation" (attached as Exhibit A), which

23   conceded the existence of the Sliding Door Defect and advised dealers that an

24   updated power sliding door motor/ECU assembly was created for 2011 Sienna

25   models due to failure events such as partial opening and audible pops when

26   opened with the exterior handle.

27       40.    On November 14, 2013, Defendants issued another TSB, T-SB-

28   0170-13, entitled "Power Sliding Door Inoperative Using Overhead Switch"

CLASS ACTION COMPLAINT

00122694

1    (attached as Exhibit B), to its dealers regarding the sliding doors for the 2011

2    Sienna.  This TSB stated, "Some 2011 model year Sienna vehicles may exhibit a

3    condition in which the power sliding doors or power hatch are inoperative from

4    the overhead console switch or require excessive pressure on the overhead

5    console switch to operate."

6       41.    On April 10, 2017, Defendants issued a third TSB relating to the

7    Sliding Door Defect, T-SB-0208-17, entitled "Power Sliding Door 25A Fuse

8    Open" (attached as Exhibit C).  Toyota admitted 2011-2016 Sienna vehicles

9    "may exhibit Sliding Door Front and Rear latches simultaneously NOT latching

10   due to the PSD 25 Amp fuse becoming open."

11      42.    The TSBs did not fix the Sliding Door Defect.    Defendants

12   instructed technicians to check upper and lower slide rails for obstructions, check

13   condition of weather-stripping, check condition of center hinge and to *replace*

14   *the OE 25 amp latch motor assembly fuse with a larger capacity 30 amp unit*.

15   Defendants (like all manufacturers) use fuses to prevent current overload and the

16   resultant overheating of associated wiring and electrical accessories.    By

17   increasing the amperage draw of the latch motors and current load in the

18   associated wires, Defendants diverted from their established wiring blueprints

19   and increased the likelihood of internal sliding door component overheat and fire.

20      43.    Defendants sought to mask the latch failure defect by increasing

21   current load through the latch motor assembly – a remedy that is just a

22   dangerous, low-cost band-aid.

23   **C.    Defendants Recall Sliding Door Assembly but Offer No Fix**

24      44.    Defendants formally acknowledged the 2011-2016 Sienna sliding

25   door defect by submitting a Safety Recall Report (attached as Exhibit D) to the

26   National Highway Transportation Safety Administration ("NHTSA") on

27   November 22, 2016.  NHTSA numbered the recall 16V-858, while Defendants

28   labeled it G04.

45.    Defendants described the defect to NHTSA as:

The subject vehicles are equipped with power sliding doors which contain motors to open or close the door based upon certain inputs. There is a possibility that, under certain limited conditions which impede the opening of the door, such as when the door becomes frozen with ice, the sliding door could stall when the door is operated.  If the motor stalls, high current in the door motor circuit could be generated, operating the fuse for the door motor.  If the fuse is operated with the sliding door latch mechanism in an unlatched position, the door could open while driving, increasing the risk to a vehicle occupant.

46.    Defendants offered no repair option to Class members through the recall.  Instead, Defendants' description of the remedy submission was simply "TBD," (or, "To Be Determined").

47.    Defendants' Product Support Division notified all Toyota dealer principals, general managers, service managers, and parts managers of the condition in a separate document (Safety Recall G04-G14 Interim Notice – Power Sliding Door, attached as Exhibit E), stating:

In the involved vehicles, there is a possibility that, under certain limited conditions, if the sliding door opening operation is impeded, the sliding door motor circuit could be overloaded, opening the fuse for the motor. If this occurs when the door latch is in an unlatched position, the door could open while driving, increasing the risk of injury to a vehicle occupant.[1]

48.    Here, Defendants admitted to dealers that its sliding door motor assembly was defective and was prone to current overload (which carries an inherent and unreasonable risk of combustible material overheat, ignition and fire).  Further, the deficient materials and workmanship created the significant safety risk of the doors opening while the vehicle is in motion.

49.    Defendants' November 22, 2016 Interim Notice to dealers stated that "[t]o avoid the occurrence of this condition, Toyota suggests that you disable

---

[1]    *See* Toyota Safety Recall G04-G14 Interim Notice, page 1.  (Ex. E.)

00122694

the power sliding door system as described below."[2]

50. Less than one month later – on December 19, 2016 – Defendants updated the November 22, 2016 Interim Notice to dealers by adding the following:

Q1a: ***Under what circumstances may the sliding door opening operation be impeded?***

A1a: In the majority of cases, this condition has occurred in cold climate areas when the sliding door becomes frozen with ice, impeding the door opening operation.

Q4: ***Can I do something to avoid the occurrence of the condition?***

A4: Yes. To avoid the occurrence of the condition, Toyota suggests that you disable the power sliding door system as described below.

Q6: ***Which and how many vehicles are covered by this Safety Recall?***

A6: There are approximately 744,400 2011-2016 model year Sienna vehicles covered by this Safety Recall. [Production Period Early January 2010-Mid-August 2016].[3]

51. Defendants chose sliding door components knowing that the assemblies would face "impediments" and created a sliding door system that failed under ordinary operating conditions and has inherent – and admitted – safety risks. Lacking a plan for corrective action, Defendants still offer Class members no options for fixing the Sliding Door Defect.

**D.    Complaints by Other Class Members**

52. Numerous complaints have been filed with NHTSA regarding problems that Class members had experienced with the Sliding Doors. By way of example:

- On January 19, 2011, a NHTSA complaint was filed on behalf of the owner of a 2011 Toyota Sienna stating:

---

[2] *See id.* at 5-6
[3] *See id.* at 1-3.

Case No. _____
00122694
CLASS ACTION COMPLAINT

The contact stated that the driver and passenger automatic sliding doors would fail intermittently. The driver side sliding door would often close independently while the contact was standing in the doorway. The vehicle was inspected by a dealer who informed the contact that the vehicle would need to be further inspected by an engineer. The vehicle was not repaired. The failure mileage was approximately 900.[4]

- On January 21, 2011, the owner of another 2011 Sienna said:

In November of 2010, we purchased 2011 Toyota Sienna XLE. Within a month, on two separate occasions the automatic sliding doors got stuck midway. They would not move back or forward. We took it to the original dealership. We were told that Toyota had them clear some "codes" for the automatic doors and the problem was fixed. Two weeks later, the same problem is happening on both doors. We took the car back and the service manager informed us that Toyota would not authorize new motors in the car, although it is a brand new car and under warranty. This is a Toyota manufacturing problem and needs to get resolved![5]

- On April 10, 2011, the owner of a 2011 Sienna complained:

Purchased 2011 Sienna LE van in October 2010. Almost immediately the power sliding doors intermittently open an inch or less & alarm sounds. You can't open or close door at this point. You have to manhandle it to close. Even turning off the power door with the switch does not help. Took it to the dealer & they said Toyota Corp. knows about it but no idea how to repair. I should just check back at next 5000 miles check. What if door gets stuck open & it's raining…. Only option is to shut off the power doors & use manually. I bought this model because of the power sliding doors![6]

- On May 30, 2013, an owner of a 2011 Toyota Sienna stated:

The power sliding doors failed on the vehicle and while I was driving down the road the door started sliding open. My kids were safely fastened in their seatbelts but the latch and safety latches both failed and this could have resulted in an accident or injury. The dealer said the latches corroded which cause the failure and proper

---

[4]    NHTSA Complaint, ODI No. 10377190 (Jan. 19, 2011).
[5]    NHTSA Complaint, ODI No. 10378177 (Jan. 21, 2011).
[6]    NHTSA Complaint, ODI No. 10395399 (April 10, 2011).

Case No. _____

CLASS ACTION COMPLAINT

00122694

lubrication could have prevented the defect but I can't find that anywhere in the service manual and I asked the dealer to show me that on their list of checks and he did not have any documentation that they check that. I have heard that many of these latches fail and need to be replaced but Toyota doesn't seem to think it is an issue.[7]

- On April 6, 2013, the owner of a 2012 Toyota Sienna complained:

We first encountered a problem in which the automatic sliding door would not function to open or close automatically but it still worked manually. About a week later the rear latch of the passenger sliding door became stuck in the lock position thus not allowing the door to fully close. I took the vehicle to my mechanic who greased the latch and allowed it to function properly however the door would still only open automatically but would open or close manually just fine. During this time there were 3 instances when the door would automatically open without human intervention but while we were driving down the highway with children in the rear seats. Toyota agrees this is a major safety issue but will only split the $1,200 bill with us. Based on the fact they are willing to help pay for the repair out of warranty proves they are aware of the issue yet fail to issue a recall and put are willing to risk lives especially children's lives to save face.[8]

- On March 13, 2015, a NHTSA complaint was filed on behalf of the owner of a 2012 Toyota Sienna, stating:

While driving approximately 40 mph, the rear driver side sliding door suddenly opened. While attempting to shut the door, the door could not be secured. The vehicle was taken to the dealer who diagnosed that the cause of the failure was due to a faulty door motor and faulty door latch. The manufacturer was notified of the failure. The failure mileage was 44,820.[9]

- On March 8, 2016, the owner of another 2012 Sienna said:

As I have driven on the highway, on three separate occasions, my rear sliding doors have spontaneously opened on their own. After it happened the first time, we turned off the automatic door feature

---

[7]    NHTSA Complaint, ODI No. 10514321 (May 30, 2013).
[8]    NHTSA Complaint, ODI No. 1058023 (April 6, 2013).
[9]    NHTSA Complaint, ODI No. 10694119 (Mar. 13, 2015).

Case No. _____

CLASS ACTION COMPLAINT

00122694

and it still happened another two times. When we took it into the dealership we were informed that this was a "known issue with 2007-2011 Toyota Sienna's but that Toyota has not acknowledged an issue yet with 2012 Sienna's". We were also told it would cost over $5000 for a partial fix. When i called Toyota Corporation their response was "what do you want us to do about it?[""][10]

- On November 30, 2013, the owner of a 2013 Toyota Sienna complained:

The sliding door was opening (via keychain button), but opened only halfway before slamming shut very quickly. It was like it thought it hit something in by the back tire, but there was nothing there. My daughter had started getting into the car, so the door slammed shut on her finger and actually latched closed with her finger stuck inside. The door hasn't worked since. This "safety feature" backfired.[11]

- On March 9, 2017, the owner of another 2013 Sienna reported:

The driver side sliding door on a 2013 Toyota Sienna minivan was slow to open do [sic] to overnight freezing rain. However, the door did open but then would not automatically reclose. More importantly, the door would not latch when manually closed. The door had to be tied shut in order to drive the vehicle to the Toyota dealer since there was no other way to fasten it. The dealer reported they knew this was part of a Toyota recall but they had no documentation on how to fix it from Toyota so they just replaced the entire motor assembly. Toyota has known about this problem and has done nothing about it. It is a dangerous situation that has to be fixed before someone falls out of a moving vehicle. The door closes and appears latched until you drive and then it flies open.[12]

- On September 29, 2016, the driver of a 2014 Toyota Sienna stated:

Closed driver sliding door with inside button. Went into grocery store. Came back out and sliding door was wide open. Tried to shut door with fob and it gets about 3/4 closed, stops, then opens again. Had to shut manually. Took car to Toyota Motorcars in Mayfield Heights, Ohio. While parked in the service department, service advisor George Madison tried to close it three times with same

---

[10]    NHTSA Complaint, ODI No. 10840430 (Mar. 8, 2016).
[11]    NHTSA Complaint, ODI No. 10554193 (Nov. 30, 2011).
[12]    NHTSA Complaint, ODI No. 10959832 (Mar. 9, 2017).

00122694

result.  He had a technician look at it.  Says door works fine for technician so there is nothing he can do.  George, a Toyota service advisor, witnessed the door fail but would not even try to find out what is wrong.  I am still under manufacturer warranty.  Toyota's Sienna sliding doors are well-known to have problems.[13]

- On April 29, 2016, the owner of a 2015 Toyota Sienna said:

My 11-year old son got out of the front passenger side of our stationary minivan (in park but running)…[and] opened the rear passenger side sliding door to get his cello out.  It wasn't opening easily, so I almost simultaneously pushed the button above me on the console.  At that point the door started to close on him.  It did not stop closing and was pressing him into the door frame.  I didn't realize what was happening, and he was too shocked to scream.  He was trying to stop it from closing on him, but it kept closing.  I expected that the door would automatically sense a blockage, stop and open back.  He was only ok because he was strong enough to press back, but his hip was very bruised.  I finally realized that the door wasn't opening, and pressed the button again above me and the door stopped….  The automatic door is now broken.  The electrical or sensing system in this door is faulty.[14]

- On January 4, 2017, the owner of a 2015 Sienna complained:

Power sliding doors, both driver and passenger, malfunctioned.  While in park, the doors were open, when we pressed to button to close them, the doors came partly closed, then opened back up, then tried to close, then tried to open.  Regardless of what we did, the door would not operate correctly.  Eventually, we turned the switch to manual and were able to close the doors.  Took the van to dealer.  They said it was the motor and replaced it.  That was 11-14-2016.  Now 1-4-2017, the doors are not working properly again.   And when I called the dealer, they never mentioned the recent recall.  Neither have I received any notification from Toyota regarding the dangerous recall.   I happened to hear about it from a family member.  I spoke with the dealer about it, they said call Toyota.  I called Toyota, they said that I would eventually get something in the mail.   It is hard to believe that a manufacturer would be so irresponsible about major safety issues.  Once I looked online, I

---

[13]   NHTSA Complaint, ODI No. 10910695 (Sept. 29, 2016).
[14]   NHTSA Complaint, ODI No. 10862153 (Apr. 29, 2016).

00122694

found that the sliding door problem has been going on for years. How is it legal for a company to purposely continue to endanger people's lives?[15]

• On May 3, 2016, the owner of a 2016 Toyota Sienna stated:

The sliding passenger doors stopped working and you could not open them manually. Passengers side door stopped working 8/3/15 and the drivers (*sic*) side door stopped working 5/3/16.[16]

## V.    TOLLING OF THE STATUTES OF LIMITATION

### A.    Discovery Rule Tolling

53.    Plaintiffs could not have discovered, through the exercise of reasonable diligence, that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

54.    Among other things, neither Plaintiffs nor the other Class members knew or could have known that the Class Vehicles were equipped with defective Sliding Doors that could fail to open or close or open or close unexpectedly.

### B.    Fraudulent Concealment Tolling

55.    Throughout the time period relevant to this action, Toyota concealed from and failed to Plaintiffs and the other Class members vital information about the Sliding Door Defect described herein.

56.    Indeed, Toyota kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class members could have discovered the defect, even upon reasonable exercise of diligence.

57.    Specifically, throughout the time period relevant to this action, Toyota has been aware that the Sliding Doors it designed, manufactured, and installed in the Class Vehicles were defective.

---

[15]    NHTSA Complaint, ODI No. 10939776 (Jan. 4, 2017).
[16]    NHTSA Complaint, ODI No. 10862854 (May 3, 2016).

Case No. _____
00122694                                        CLASS ACTION COMPLAINT

58.    Despite its knowledge of the defect, Toyota failed to disclose and concealed this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

59.    Plaintiffs and the other Class members justifiably relied on Toyota to disclose the Sliding Door Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

60.    Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**C.    Estoppel**

61.    Toyota was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the defective Sliding Door Assembly.

62.    Toyota knowingly concealed the true nature, quality, and character of the defective Sliding Door Assembly from consumers.

63.    Based on the foregoing, Toyota is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

65.    Plaintiffs seek to represent a class (the "Nationwide Class") defined as:

///

///

Case No. _____

CLASS ACTION COMPLAINT

> All persons, entities, or organizations who own or owned, purchase(d) or lease(d), a Class Vehicle in any of the fifty States, the District of Columbia, Puerto Rico, and all other United States territories and possessions.

66.    Plaintiffs also respectively seek to represent the following statewide classes (the "Statewide Classes") defined as follows:

> All persons, entities, or organizations who own or owned, purchase(d) or lease(d), a Class Vehicle in Florida.

> All persons, entities, or organizations who own or owned, purchase(d) or lease(d), a Class Vehicle in Kentucky.

> All persons, entities, or organizations who own or owned, purchase(d) or lease(d), a Class Vehicle in Pennsylvania.

> All persons, entities, or organizations who own or owned, purchase(d) or lease(d), a Class Vehicle in West Virginia.

67.    Excluded from the Nationwide and Statewide Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers and their immediate family members; and Court staff assigned to this case.    Plaintiffs reserve the right to modify or amend these class definitions, as appropriate, during the course of this litigation.

68.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Nationwide and Statewide Classes are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiffs are informed and believe that there are not less than 700,000 members of the Nationwide and Statewide Classes, the precise number of Nationwide and Statewide Class members is unknown to Plaintiffs, but may be ascertained from Toyota's books and records.  Nationwide and Statewide Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

Case No. _____

**CLASS ACTION COMPLAINT**

00122694

69.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and Statewide Class members, including, without limitation:

a.    whether Toyota engaged in the conduct alleged herein;

b.    whether Toyota's alleged conduct violates applicable law;

c.    whether Toyota designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d.    whether Toyota misled Nationwide and Statewide Class members about the quality of the Sliding Doors in the Class Vehicles;

e.    whether the Sliding Doors contain the Sliding Door Defect alleged herein;

f.    whether Toyota had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Nationwide and Statewide Class members;

g.    whether Toyota's omissions and concealment regarding the quality of the Class Vehicles were likely to deceive Statewide Class members in violation of the state consumer protection statutes alleged herein;

h.    whether Toyota breached its express and implied warranties to the Nationwide and Statewide Class members with respect to the Class Vehicles;

i.    whether Nationwide and Statewide Class members overpaid for their Class Vehicles as a result of the defect alleged herein;

j.    whether Nationwide and Statewide Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

00122694

k.      the amount and nature of relief to be awarded to Plaintiffs and the other Nationwide and Statewide Class members.

70.      **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Nationwide and Statewide Class members' claims because Plaintiffs and the other Nationwide and Statewide Class members purchased or leased Class Vehicles with a Sliding Door Defect.   Neither Plaintiffs nor the other Nationwide and Statewide Class Members would have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known of the Sliding Door Defect.  Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the same wrongful practices in which Toyota engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.

71.      **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Nationwide and Statewide Classes that they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.   The Nationwide and Statewide Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

72.      **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Toyota has acted, or refused to act, on grounds generally applicable to Plaintiffs and the other Nationwide and Statewide Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Nationwide and Statewide Classes as a whole.

///

///

19

Case No. _____

CLASS ACTION COMPLAINT

73.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.    The damages or other financial detriment suffered by Plaintiffs and the other Nationwide and Statewide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Toyota, so it would be impracticable for the Nationwide and Statewide Class members to individually seek redress for Toyota's wrongful conduct.  Even if the Nationwide and Statewide Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLAIMS FOR RELIEF

**A.    Claim Brought on Behalf of the Nationwide Class**

### COUNT 1

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### 15 U.S.C. §§ 2301, *et seq.*

74.    Plaintiffs repeat and reallege paragraphs 1-73 as if fully set forth herein.

75.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

76.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

77.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

Case No. _____

00122694

**CLASS ACTION COMPLAINT**

78.    Toyota is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

79.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

81.    In its Comprehensive Warranty, Toyota expressly warranted that it would repair or replace defects in the Class Vehicles free of charge.

82.    Toyota's Comprehensive Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

83.    With respect to Class members' purchases or leases of the Class Vehicles, the terms of Toyota's written warranty and implied warranty became part of the basis of the bargain between Toyota, on the one hand, and Plaintiffs and each of the other Class members, on the other.

84.    Toyota breached these warranties as described in more detail above. Without limitation, the Class Vehicles are equipped with defective power sliding doors, which leads to the doors' failure to open and close properly.  This is caused by the failure of the Sliding Door Assembly, including a failure of the front and rear latches which secure the doors to the center and rear pillars, failure of the pulley/cables in the door, failure of the controllers or controller assembly or attachment in the sliding doors and in models with motorized doors, or failure of the motor, which opens and closes the doors.

85.    Rather than take any measures to cure its warranty breaches to Plaintiffs and the other Class members, Toyota merely issued an interim notice to Class Vehicle owners, suggesting that they "disable the power sliding door system[.]"

Case No. _____

00122694

86.    Plaintiffs, individually and on behalf of the other Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of warranties, through a notice letter dated May 17, 2017, and delivered by FedEx to Toyota's headquarters in California.  Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

87.    At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Sliding Door Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford Toyota further opportunities to cure its breach of warranties is excused and thus deemed satisfied.

88.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy in this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

89.    As a direct and proximate result of Toyota's breaches of its Comprehensive Warranty and the implied warranty of merchantability, Plaintiffs and the other Class members have sustained damages in an amount to be determined at trial.

90.    Plaintiffs, individually and on behalf of all the other Class members, seek all damages permitted by law, including the diminution in value of their vehicles, in an amount to be proven at trial.

Case No. _____

00122694
CLASS ACTION COMPLAINT

**B.**    **Claims Brought on Behalf of the Florida Class**

## COUNT 2

### VIOLATIONS OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT

**Fla. Stat. §§ 501.201,** *et seq.*

91.    Plaintiff Combs ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges paragraphs 1-73 as if fully set forth herein.

92.    Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

93.    The Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201, *et seq.*, states that, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

94.    By the conduct described in detail above and incorporated herein, Toyota engaged in unfair or deceptive acts in violation of F.S.A. § 501.204.

95.    Toyota's omissions regarding the Sliding Door Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or pay the same price for) the Class Vehicles.

96.    Toyota intended for Plaintiff and the other Class members to rely on Toyota's omissions regarding the Sliding Door Defect.

97.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Toyota's omissions of fact concerning the above-described Sliding Door Defect that results in a failure of the doors to properly open and close, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

98.    Had Toyota disclosed all material information regarding the Sliding Door Defect to Plaintiff and the other Class members, Plaintiff and the other

Case No. _____

00122694

1  Class members would not have purchased or leased Class Vehicles or would
2  have paid less to do so.

3      99.    Toyota's omissions have deceived Plaintiff, and those same
4  business practices have deceived or are likely to deceive members of the
5  consuming public and the other members of the Class.

6      100.    In addition to being deceptive, the business practices of Toyota were
7  unfair because Toyota knowingly sold Plaintiff and the other Class members
8  Class Vehicles with defective Sliding Doors that are essentially unusable for the
9  purposes for which they were sold.  The injuries to Plaintiff and the other Class
10  members are substantial and greatly outweigh any alleged countervailing benefit
11  to Plaintiffs and the other Class members or to competition under all of the
12  circumstances.  Moreover, in light of Toyota's exclusive knowledge of the
13  Sliding Door Defect, the injury is not one that Plaintiffs or the other Class
14  members could have reasonably avoided.

15      101.    As a direct and proximate result of Toyota's unfair and deceptive
16  trade practices, Plaintiff and the other Class members have suffered ascertainable
17  loss and actual damages.  Plaintiff and the other Class members who purchased
18  or leased the Class Vehicles would not have purchased or leased the Class
19  Vehicles, or alternatively, would have paid less for them had the truth about the
20  Sliding Door Defect been disclosed.  Plaintiff and the other Class members also
21  suffered diminished value of their vehicles.  Plaintiff and the other Class
22  members are entitled to recover actual damages, attorneys' fees and costs, and all
23  other relief allowed under F.S.A. §§ 501.201, *et seq.*

24                    **COUNT 3**

25          **BREACH OF EXPRESS WARRANTY**

26              **Fla. Stat. §§ 672.313 and 680.21**

27      102.    Plaintiff Combs ("Plaintiff," for purposes of the Florida Class's
28  claims) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

103.   Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

104.   Toyota is and was at all relevant times a merchant with respect to the Class Vehicles.

105.   In its Comprehensive Warranty, Toyota expressly warranted that it would repair or replace defects in the Class Vehicles free of charge.

106.   Plaintiff and the other Class members bought or leased Class Vehicles manufactured by Toyota.

107.   Toyota's Comprehensive Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the defective Sliding Doors.

108.   Toyota breached its express warranty to repair defects within the Class Vehicles.  Toyota has not repaired, and has been unable to repair, the Class Vehicles' defects.

109.   Also, as alleged in more detail herein, at the time that Toyota warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Toyota improperly concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

110.   Rather than take any measures to cure its warranty breaches to Plaintiff and the other Class members, Toyota merely issued an interim notice to Class Vehicle owners, suggesting that they "disable the power sliding door system[.]"

111.   Furthermore, the Comprehensive Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

Case No. _____
**CLASS ACTION COMPLAINT**
00122694

112.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

113.   Plaintiffs Tinney, individually and on behalf of the other Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of express warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.   Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

114.   At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Sliding Door Defect.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Toyota further opportunities to cure its breach of warranty is excused and thus deemed satisfied.

115.   Much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Toyota's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

116.   As a direct and proximate result of Toyota's breach of its express warranty, Plaintiff and the other Class members have been damaged in an

Case No. _____

00122694

1   amount to be determined at trial.

2                              **COUNT 4**

3                       **FRAUDULENT OMISSION**

4        117.   Plaintiff Combs ("Plaintiff," for purposes of the Florida Class's

5   claims) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

6        118.   Plaintiff brings this Count individually and on behalf of the other

7   members of the Florida Class (the "Class," for purposes of this Count).

8        119.   Toyota was aware of the Sliding Door Defect when it marketed and

9   sold the Class Vehicles to Plaintiff and the other members of the Class.

10       120.   Having been aware of the Sliding Door Defect, and having known

11  that Plaintiff and the other members of the Class could not have reasonably

12  expected to know of the Sliding Door Defect, Toyota had a duty to disclose the

13  defect to Plaintiff and the other members of the Class in connection with the sale

14  or lease of the Class Vehicles.

15       121.   Toyota did not disclose the Sliding Door Defect to Plaintiff and the

16  other members of the Class in connection with the sale of the Class Vehicles.

17       122.   For the reasons set forth above, the Sliding Door Defect comprises

18  material information with respect to the sale or lease of the Class Vehicles.

19       123.   In purchasing or leasing the Class Vehicles, Plaintiff and the other

20  members of the Class reasonably relied on Toyota to disclose known material

21  defects with respect to the Class Vehicles.

22       124.   Had Plaintiff and the other members of the Class known of the

23  Sliding Door Defect, they would have not purchased the Class Vehicles or would

24  have paid less for the Class Vehicles.

25       125.   Through its omissions regarding the Sliding Door Defect, Toyota

26  intended to induce, and did induce, Plaintiff and the other members of the Class

27  to either purchase a Class Vehicle that they otherwise would not have purchased,

28  or pay more for a Class Vehicle than they otherwise would have paid.

Case No. _____

00122694

**CLASS ACTION COMPLAINT**

126.   As a direct and proximate result of Toyota's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Sliding Door Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT 5**

**UNJUST ENRICHMENT**

127.   Plaintiff Combs ("Plaintiff," for purposes of the Florida Class's claims) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

128.   Plaintiff brings this Count individually and on behalf of the other members of the Florida Class (the "Class," for purposes of this Count).

129.   Toyota has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Toyota's concealment of the Sliding Door Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

130.   Toyota has received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

131.   It is inequitable and unconscionable for Toyota to retain these benefits.

132.   Because Toyota concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Toyota's misconduct.

133.   Toyota knowingly accepted the unjust benefits of its wrongful conduct.

134.   As a result of Toyota's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

00122694

C.    **Claims Brought on Behalf of the Kentucky Class**

<u>COUNT 6</u>

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT**

**Ky. Rev. Stat. Ann. §§ 367.110, *et seq*.**

135.    Plaintiffs Gillespie and Stalker ("Plaintiffs," for purposes of the Kentucky Class's claims) repeat and reallege paragraphs 1-73 as if fully set forth herein.

136.    Plaintiffs bring this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

137.    The Kentucky Unfair Trade Practices Act states that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Ky. Rev. Stat. Ann. § 367.170(1).

138.    By the conduct described in detail above and incorporated herein, Toyota engaged in unfair or deceptive acts in violation of Ky. Rev. Stat. Ann. § 367.170.

139.    Toyota's omissions regarding the Sliding Door Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or pay the same price for) the Class Vehicles.

140.    Toyota intended for Plaintiffs and the other Class members to rely on Toyota's omissions regarding the Sliding Door Defect.

141.    Plaintiffs and the other Class members justifiably acted or relied to their detriment upon Toyota's omissions of fact concerning the above-described Sliding Door Defect that results in a failure of the doors to properly open and close, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

142.    Had Toyota disclosed all material information regarding the Sliding Door Defect to Plaintiffs and the other Class members, Plaintiffs and the other

00122694

1   Class members would not have purchased or leased Class Vehicles or would
2   have paid less to do so.

3        143.   Toyota's omissions have deceived Plaintiffs, and those same
4   business practices have deceived or are likely to deceive members of the
5   consuming public and the other Class members.

6        144.   In addition to being deceptive, the business practices of Toyota were
7   unfair because Toyota knowingly sold Plaintiffs and the other Class members
8   Class Vehicles with defective Sliding Doors that are essentially unusable for the
9   purposes for which they were sold.  The injuries to Plaintiffs and the other Class
10  members are substantial and greatly outweigh any alleged countervailing benefit
11  to Plaintiffs and the other Class members or to competition under all of the
12  circumstances.   Moreover, in light of Toyota's exclusive knowledge of the
13  Sliding Door Defect, the injury is not one that Plaintiffs or the other Class
14  members could have reasonably avoided.

15       145.   As a direct and proximate result of Toyota's unfair and deceptive
16  trade practices, Plaintiffs and the other Class members have suffered
17  ascertainable loss and actual damages.  Plaintiffs and the other Class members
18  who purchased or leased the Class Vehicles would not have purchased or leased
19  the Class Vehicles, or, alternatively, would have paid less for them had the truth
20  about the Sliding Door Defect been disclosed.  Plaintiffs and the other Class
21  members also suffered diminished value of their vehicles.  Plaintiffs and the
22  other Class members are entitled to recover actual damages, attorneys' fees and
23  costs, and all other relief allowed under Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*

24                              **COUNT 7**
25                   **BREACH OF EXPRESS WARRANTY**
26            **Ky. Rev. Stat. Ann. §§ 355.2-313 and 355.2A-210**

27       146.   Plaintiffs Gillespie and Stalker ("Plaintiffs," for purpose of the
28  Kentucky Class's claims) repeat and reallege paragraphs 1-73 as if fully set forth

00122694
**CLASS ACTION COMPLAINT**

herein.

147.   Plaintiffs bring this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

148.   Toyota is and was at all relevant times a merchant with respect to the Class Vehicles.

149.   In its Comprehensive Warranty, Toyota expressly warranted that it would repair or replace defects in the Class Vehicles free of charge.

150.   Plaintiffs and the other Class members bought or leased Class Vehicles manufactured by Toyota.

151.   Toyota's Comprehensive Warranty formed the basis of the bargain that was reached when Plaintiffs and other Class members purchased or leased their Class Vehicles equipped with the defective Sliding Doors.

152.   Toyota breached its express warranty to repair defects within the Class Vehicles.  Toyota has not repaired, and has been unable to repair, the Class Vehicles' defects.

153.   Also, as alleged in more detail herein, at the time that Toyota warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Toyota improperly concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

154.   Rather than take any measures to cure its warranty breaches to Plaintiffs and the other Class members, Toyota merely issued an interim notice to Class Vehicle owners, suggesting that they "disable the power sliding door system[.]"

155.   Furthermore, the Comprehensive Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to

adequately provide the promised remedies within a reasonable time.

156.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members seeks all remedies allowed by law.

157.   Plaintiffs Tinney, individually and on behalf of the Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of express warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.  Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

158.   At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Sliding Door Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford Toyota further opportunities to cure its breach of warranty is excused and thus deemed satisfied.

159.   Much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Toyota's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make them whole.

Case No. _____

00122694
CLASS ACTION COMPLAINT

160.   As a direct and proximate result of Toyota's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 8

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### Ky. Rev. Stat. Ann. §§ 355.2-314 and 355.2A-212

161.   Plaintiffs Gillespie and Stalker ("Plaintiffs," for purposes of the Kentucky Class's claims) repeat and reallege paragraphs 1-73 as if fully set forth herein.

162.   Plaintiffs bring this Count individually and on behalf of the other members of the Kentucky Class (the "Class," for purposes of this Count).

163.   Toyota is and was at all relevant times a merchant with respect to motor vehicles under Ky. Rev. Stat. Ann. §§ 355.2-104 and 355.2A-103.

164.   Pursuant to Ky. Rev. Stat. Ann. §§ 355.2-314 and 355.2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

165.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Sliding Door Defect, which leads to the doors' failure to open and close properly.

166.   Plaintiffs Tinney, individually and on behalf of the Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of implied warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.  Toyota was also provided notice of the Sliding Door Defect through

1   numerous complaints filed against it directly and through its dealers, as well as

2   its own internal engineering knowledge.

3       167.   Plaintiffs and the other Class members suffered injuries due to the

4   defective nature of the Class Vehicles and Toyota's breach of the implied

5   warranty of merchantability.

6       168.   As a direct and proximate result of Toyota's breach of the implied

7   warranty of merchantability, Plaintiffs and the other Class members have been

8   damaged in an amount to be proven at trial.

9                                **COUNT 9**

10                         **FRAUDULENT OMISSION**

11      169.   Plaintiffs Gillespie and Stalker ("Plaintiffs," for purposes of the

12  Kentucky Class's claims) repeat and reallege paragraphs 1-73 as if fully set forth

13  herein.

14      170.   Plaintiffs bring this Count individually and on behalf of the other

15  members of the Kentucky Class (the "Class," for purposes of this Count).

16      171.   Toyota was aware of the Sliding Door Defect when it marketed and

17  sold the Class Vehicles to Plaintiffs and the other members of the Class.

18      172.   Having been aware of the Sliding Door Defect, and having known

19  that Plaintiffs and the other members of the Class could not have reasonably

20  expected to know of the Sliding Door Defect, Toyota had a duty to disclose the

21  defect to Plaintiffs and the other members of the Class in connection with the

22  sale or lease of the Class Vehicles.

23      173.   Toyota did not disclose the Sliding Door Defect to Plaintiffs and the

24  other members of the Class in connection with the sale of the Class Vehicles.

25      174.   For the reasons set forth above, the Sliding Door Defect comprises

26  material information with respect to the sale or lease of the Class Vehicles.

27      175.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other

28  members of the Class reasonably relied on Toyota to disclose known material

Case No. _____

**CLASS ACTION COMPLAINT**

1    defects with respect to the Class Vehicles.

2        176.    Had Plaintiffs and the other members of the Class known of the

3    Sliding Door Defect, they would have not purchased the Class Vehicles or would

4    have paid less for the Class Vehicles.

5        177.    Through its omissions regarding the Sliding Door Defect, Toyota

6    intended to induce, and did induce, Plaintiffs and the other members of the Class

7    to either purchase a Class Vehicle that they otherwise would not have purchased,

8    or pay more for a Class Vehicle than they otherwise would have paid.

9        178.    As a direct and proximate result of Toyota's omissions, Plaintiffs

10    and the other members of the Class either overpaid for the Class Vehicles or

11    would not have purchased the Class Vehicles at all if the Sliding Door Defect

12    had been disclosed to them, and, therefore, have incurred damages in an amount

13    to be determined at trial.

14                            **COUNT 10**

15                        **UNJUST ENRICHMENT**

16        179.    Plaintiffs Gillespie and Stalker ("Plaintiffs," for purposes of the

17    Kentucky Class's claims) repeat and reallege paragraphs 1-73 as if fully set forth

18    herein.

19        180.    Plaintiffs bring this Count individually and on behalf of the other

20    members of the Kentucky Class (the "Class," for purposes of this Count).

21        181.    Toyota has benefitted from selling and leasing at an unjust profit

22    defective Class Vehicles that had artificially inflated prices due to Toyota's

23    concealment of the Sliding Door Defect, and Plaintiffs and the other members of

24    the Class have overpaid for these vehicles.

25        182.    Toyota has received and retained unjust benefits from Plaintiffs and

26    the other members of the Class, and inequity has resulted.

27        183.    It is inequitable and unconscionable for Toyota to retain these

28    benefits.

184.   Because Toyota concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Toyota's misconduct.

185.   Toyota knowingly accepted the unjust benefits of its wrongful conduct.

186.   As a result of Toyota's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Pennsylvania Class**

## COUNT 11

### VIOLATIONS OF THE PENNSYLVANIA

### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. §§ 201-1, et *seq.*

187.   Plaintiff Harp ("Plaintiff," for the purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-73 as if fully set forth herein.

188.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

189.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Cons. Stat. § 201-3.

190.   By the conduct described in detail above and incorporated herein, Toyota engaged in unfair or deceptive acts in violation of 73 Pa. Cons. Stat. § 201-3.

191.   Toyota's omissions regarding the Sliding Door Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or pay the same price for) the Class Vehicles.

Case No. _____

00122694

192.   Toyota intended for Plaintiff and the other Class members to rely on Toyota's omissions regarding the Sliding Door Defect.

193.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Toyota's omissions of fact concerning the above-described Sliding Door Defect that results in a failure of the doors to properly open and close, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

194.   Had Toyota disclosed all material information regarding the Sliding Door Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

195.   Toyota's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other class members.

196.   In addition to being deceptive, the business practices of Toyota were unfair because Toyota knowingly sold Plaintiff and the other Class members Class Vehicles with defective Sliding Doors that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of Toyota's exclusive knowledge of the Sliding Door Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

197.   As a direct and proximate result of Toyota's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the

Sliding Door Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 73 Pa. Cons. Stat. §§ 201-1, *et seq.*

## COUNT 12

### BREACH OF EXPRESS WARRANTY

### 13 Pa. Cons. Stat. §§ 2313 and 2A210

198.   Plaintiff Harp ("Plaintiff," for purpose of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-73 as if fully set forth herein.

199.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

200.   Toyota is and was at all relevant times a merchant with respect to the Class Vehicles.

201.   In its Comprehensive Warranty, Toyota expressly warranted that it would repair or replace defects in the Class Vehicles free of charge.

202.   Plaintiff and the other Class members bought or leased Class Vehicles manufactured by Toyota.

203.   Toyota's Comprehensive Warranty formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the defective Sliding Doors.

204.   Toyota breached its express warranty to repair defects within the Class Vehicles. Toyota has not repaired, and has been unable to repair, the Class Vehicles' defects.

205.   Also, as alleged in more detail herein, at the time that Toyota warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Toyota improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class

Case No. _____

00122694

Vehicles under false pretenses.

206.  Rather than take any measures to cure its warranty breaches to Plaintiff and the other Class members, Toyota merely issued an interim notice to Class Vehicle owners, suggesting that they "disable the power sliding door system[.]"

207.  Furthermore, the Comprehensive Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

208.  Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members seeks all remedies allowed by law.

209.  Plaintiffs Tinney, individually and on behalf of the Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of express warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.  Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

210.  At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Sliding Door Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Toyota further opportunities to cure its breach of warranty is excused and thus deemed satisfied.

Case No. _____

00122694

211.   Much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Toyota's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

212.   As a direct and proximate result of Toyota's breach of its express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 13

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### 13 Pa. Cons. Stat. §§ 2314 and 2A212

213.   Plaintiff Harp ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges paragraphs 1-73 as if fully set forth herein.

214.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

215.   Toyota is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" of motor vehicles under § 2103(a).

216.   Pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

217.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

Case No. _____
CLASS ACTION COMPLAINT
00122694

Specifically, the Class Vehicles suffer from the Sliding Door Defect, which leads to the doors' failure to open and close properly.

218.   Plaintiffs Tinney, individually and on behalf of the Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of implied warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.   Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

219.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Toyota's breach of the implied warranty of merchantability.

220.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT 14

## FRAUDULENT OMISSION

221.   Plaintiff Harp ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

222.   Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

223.   Toyota was aware of the Sliding Door Defect when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

224.   Having been aware of the Sliding Door Defect, and having known that Plaintiff and the other members of the Class could not have reasonably expected to know of the Sliding Door Defect, Toyota had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

Case No. _____

00122694

225.   Toyota did not disclose the Sliding Door Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

226.   For the reasons set forth above, the Sliding Door Defect comprises material information with respect to the sale or lease of the Class Vehicles.

227.   In purchasing or leasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Toyota to disclose known material defects with respect to the Class Vehicles.

228.   Had Plaintiff and the other members of the Class known of the Sliding Door Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

229.   Through its omissions regarding the Sliding Door Defect, Toyota intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

230.   As a direct and proximate result of Toyota's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Sliding Door Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

### COUNT 15

### UNJUST ENRICHMENT

231.   Plaintiff Harp ("Plaintiff," for purposes of the Pennsylvania Class's claims) repeats and realleges Paragraphs 1-73 as if fully set forth herein.

232.   Plaintiff brings this Count individually and on behalf of the other members of the Pennsylvania Class (the "Class," for purposes of this Count).

233.   Toyota has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Toyota's concealment of the Sliding Door Defect, and Plaintiff and the other members of

1    the Class have overpaid for these vehicles.

2        234.  Toyota has received and retained unjust benefits from Plaintiff and

3    the other members of the Class, and inequity has resulted.

4        235.  It is inequitable and unconscionable for Toyota to retain these

5    benefits.

6        236.  Because Toyota concealed its fraud and deception, Plaintiff and the

7    other members of the Class were not aware of the true facts concerning the Class

8    Vehicles and did not benefit from Toyota's misconduct.

9        237.  Toyota knowingly accepted the unjust benefits of its wrongful

10   conduct.

11       238.  As a result of Toyota's misconduct, the amount of its unjust

12   enrichment should be disgorged and returned to Plaintiffs and the other members

13   of the Class in an amount to be proven at trial.

14   **E.    Claims Brought on Behalf of the West Virginia Class**

15                           **<u>COUNT 16</u>**

16               **BREACH OF EXPRESS WARRANTY**

17               **W. Va. Code §§ 46-2-213 and 46-2A-210**

18       239.  Plaintiffs Tinney ("Plaintiffs," for purposes of the West Virginia

19   Class's claims) repeat and reallege Paragraphs 1-73 as if fully set forth herein.

20       240.  Plaintiffs bring this Count individually and on behalf of the other

21   members of the West Virginia Class (the "Class," for purposes of this Count).

22       241.  Toyota is and was at all relevant times a merchant with respect to

23   the Class Vehicles.

24       242.  In its Comprehensive Warranty, Toyota expressly warranted that it

25   would repair or replace defects in the Class Vehicles free of charge.

26       243.  Plaintiffs and the other Class members bought or leased Class

27   Vehicles manufactured by Toyota.

28

Case No. _____
**CLASS ACTION COMPLAINT**

244.   Toyota's Comprehensive Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Sliding Doors.

245.   Toyota breached its express warranty to repair defects within the Class Vehicles.  Toyota has not repaired, and has been unable to repair, the Class Vehicles' defects.

246.   Also, as alleged in more detail herein, at the time that Toyota warranted, leased, and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Toyota improperly concealed material facts regarding its Class Vehicles.  Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

247.   Rather than take any measures to cure its warranty breaches to Plaintiffs and the other Class members, Toyota merely issued an interim notice to Class Vehicle owners, suggesting that they "disable the power sliding door system[.]"

248.   Furthermore, the Comprehensive Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Toyota has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

249.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

250.   Plaintiffs, individually and on behalf of the other Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of express warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in

California.  Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

251.  At the time of sale or lease of each Class Vehicle, Toyota knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Sliding Door Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs and the other Class members resort to an informal dispute resolution procedure and/or afford Toyota further opportunities to cure its breach of warranty is excused and thus deemed satisfied.

252.  Much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Toyota's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make them whole.

253.  As a direct and proximate result of Toyota's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT 17

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### W. Va. Code §§ 46-2-314 and 46-2A-212

254.  Plaintiffs Tinney ("Plaintiffs," for purposes of the West Virginia Class's claims) repeat and reallege Paragraphs 1-73 as if fully set forth herein.

255.  Plaintiffs bring this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

Case No. _____

00122694

256.   Toyota is and was at all relevant times a merchant with respect to motor vehicles under W. Va. Code §§ 46-2-104 and 46-2A-103.

257.   Pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

258.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Sliding Door Defect, which leads to the doors' failure to open and close properly.

259.   Plaintiffs, individually and on behalf of the other Class members, notified Toyota of the Sliding Door Defect in the Class Vehicles, and its corresponding breach of implied warranty, through a notice letter dated May 17, 2017, and delivered by United States Certified Mail to Toyota's headquarters in California.  Toyota was also provided notice of the Sliding Door Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

260.   Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Toyota's breach of the implied warranty of merchantability.

261.   As a direct and proximate result of Toyota's breach of the implied warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

00122694

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT 18

## FRAUDULENT OMISSION

262.   Plaintiffs Tinney ("Plaintiffs," for purposes of the West Virginia Class's claims) repeat and reallege Paragraphs 1-73 as if fully set forth herein.

263.   Plaintiffs bring this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

264.   Toyota was aware of the Sliding Door Defect when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

265.   Having been aware of the Sliding Door Defect, and having known that Plaintiffs and the other members of the Class could not have reasonably expected to know of the Sliding Door Defect, Toyota had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

266.   Toyota did not disclose the Sliding Door Defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

267.   For the reasons set forth above, the Sliding Door Defect comprises material information with respect to the sale or lease of the Class Vehicles.

268.   In purchasing or leasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on Toyota to disclose known material defects with respect to the Class Vehicles.

269.   Had Plaintiffs and the other members of the Class known of the Sliding Door Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

270.   Through its omissions regarding the Sliding Door Defect, Toyota intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

Case No. _____

00122694

271.  As a direct and proximate result of Toyota's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Sliding Door Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 19

### UNJUST ENRICHMENT

272.  Plaintiffs Tinney ("Plaintiffs," for purposes of the West Virginia Class's claims) repeat and reallege Paragraphs 1-73 as if fully set forth herein.

273.  Plaintiffs bring this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count).

274.  Toyota has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Toyota's concealment of the Sliding Door Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

275.  Toyota has received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

276.  It is inequitable and unconscionable for Toyota to retain these benefits.

277.  Because Toyota concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Toyota's misconduct.

278.  Toyota knowingly accepted the unjust benefits of its wrongful conduct.

279.  As a result of Toyota's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

Case No. _____
00122694
CLASS ACTION COMPLAINT

## VIII.  <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Nationwide and Statewide Classes, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1.     Declaring that this action is a proper class action, certifying the Nationwide and Statewide Classes as requested herein, designating Plaintiffs as Nationwide and Statewide Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

2.     Enjoining Toyota from continuing the unfair business practices alleged in this Complaint;

3.     Ordering Toyota to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Nationwide Statewide Class members, as allowable by law;

4.     Ordering Toyota to pay both pre- and post-judgment interest on any amounts awarded;

5.     Ordering Toyota to pay attorneys' fees and costs of suit; and

6.     Ordering such other and further relief as may be just and proper.

## IX.     <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated: June 22, 2017            MONTELEONE & McCRORY, LLP
                                JEFFREY S. HURST (138664)


                                By:      *s/  Jeffrey S. Hurst*
                                     JEFFREY S. HURST

                                725 South Figueroa Street, Suite 3200
                                Los Angeles, CA  90017
                                Tel: 213/612-9900
                                hurst@mmlawyers.com

                                DICELLO LEVITT & CASEY, LLC
                                ADAM J. LEVITT*
                                Ten North Dearborn Street. 11th Floor

49                          Case No. _____

00122694

1    Chicago, IL  60602
Tel: 312/214-7900
2    alevitt@dlcfirm.com

3    BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
4    W. DANIEL "DEE" MILES III*
H. CLAY BARNETT, III*
5    272 Commerce Street
Montgomery, AL  36104
6    Tel: 334/269-2343
Dee.Miles@Beasleyallen.com
7    Clay.Barnett@Beasleyallen.com

8    HENDRICKSON & LONG, PLLC
R. SCOTT LONG*
9    GUY R. BUCCI*
JOHN H. TINNEY, JR.*
10   JOHN K. CECIL*
214 Capitol Street
11   Charleston, WV  25301
Tel: 304/346-5500
12   scott@handl.com
gbucci@handl.com
13   jtinney@handl.com
jcecil@handl.com
14
*Counsel for Plaintiffs and*
15   *the Proposed Classes*

16   * *Pro Hac Vice* motion to be filed

17

18

19

20

21

22

23

24

25

26

27

28

Case No. _____
00122694                    CLASS ACTION COMPLAINT